IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A 2010 FORD EXPLORER WHITE, VIN 1FMEU7EE1AUA24613, NH REG 4927925 | Case No. 1:21-mj-332-01-DL<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Benjamin Slocum, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since June 2007. I am currently assigned to the Manchester, New Hampshire field office. As part of my regular duties as a Special Agent, I investigate criminal violations relating to a broad range of immigration and customs-related statutes and have been cross-designated to investigate violations relating to the distribution of illicit narcotics as specified under Title 21 of the U.S. Code. I have been trained in drug investigations, search warrants, undercover techniques, surveillance, debriefing of informants, and other investigative procedures. Through my training, education, and experience, I have become familiar generally with the manner in which drug distribution organizations conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement. In the course of participating in investigations of drug distribution organizations, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of search warrants, the use of tracking devices,

debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device in or on the following vehicle: a 2010 WHITE FORD EXPLORER, VIN: 1FMEU7EE1AUA24613, NH REG 4927925, New Hampshire registration 4927925, registered to Victoria BEAN of 76 Sullivan Street, Manchester, New Hampshire (the "Subject Vehicle"). Based on the facts set forth in this affidavit, I believe that the Subject Vehicle is being used by BEAN in furtherance of violating Title 21, United States Code, Sections 841(a)(1) (distribution of controlled substances) and 846 (conspiracy to distribute controlled substances) and that there is probable cause to believe that the installation of a tracking device in or on the Subject Vehicle and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute drugs often utilize motor vehicles in order to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances utilize motor vehicles in order to transport controlled substances to various locations in order to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds to and/or from their illicit transactions, as well as to and/or from locations where these proceeds may be counted and stored. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law

enforcement officers to effectively conduct surveillance. The presence of a tracking device on a motor vehicle which is being utilized for the distribution of controlled substances or the transportation of drug proceeds is beneficial because it allows law enforcement officers to track the movement of the vehicle effectively and to decrease the chance of detection.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. In preparing this affidavit, I have prepared reports and reviewed reports prepared by other investigators of witness interviews, surveillance, and other investigative efforts regarding this investigation. In addition, I have discussed this investigation with other officers involved in the case. Through these conversations and my own analysis of these reports, I am familiar with all aspects of this investigation. The information contained in this affidavit is submitted for the sole purpose of supplying probable cause for the issuance of an order authorizing the government, at any hour of the day or night, to install, monitor, maintain, and remove a mobile tracking device which transmits an electronic signal that can be used to detect the movement and location of the above described Subject Vehicle, and make surreptitious entry into the vehicle at any hour of the day or night to install the mobile tracking device, maintain the mobile tracking device, or remove the mobile tracking device. This affidavit does not set forth all of my knowledge about this investigation.

## **PROBABLE CAUSE**

5. In September of 2021, HSI Manchester received information from a Cooperating Defendant (herein referred to as CD) that Victoria BEAN is distributing large amounts of methamphetamine in violation of 21 USC § 841 in the greater Manchester, New Hampshire area. The CD originally began cooperating with the HSI for consideration on pending criminal charges.

6. According to the CD, BEAN meets with her source of supply (SOS) once or twice a week and receives anywhere from a half of pound to two pounds of methamphetamine. The CD

further stated that BEAN drives the Subject Vehicle to meet her SOS somewhere in Southern New Hampshire. At this time, through surveillance and other means, it is known to HSI that BEAN is operating a white Ford Explorer (Subject Vehicle). A check with the Department of Motor Vehicles indicated that the Subject Vehicle is registered to BEAN.

7. On September 30, 2021, I received information from the CD that BEAN was going to meet with her SOS sometime around 8:00 p.m., and that BEAN would be driving the Subject Vehicle to meet him. HSI Manchester agents established surveillance in the area of BEAN's residence prior to 8:00 p.m. At this time, the Subject Vehicle was not located in the area of 76 Sullivan, Street.

8. Later in the evening, I received information from the CD that BEAN would not be meeting her SOS since BEAN took too long to go and meet him. The CD stated that BEAN would be leaving early the next morning instead to meet with him.

9. On October 1, 2021, at approximately 7:00 a.m., agents from HSI Manchester established surveillance in the area of 76 Sullivan Street. At this time, the Subject Vehicle was parked alongside of 76 Sullivan Street. At approximately 8:30 a.m., I received information from the CD that BEAN should be leaving at any time to meet with her SOS.

10. At approximately 9:00 a.m. I observed BEAN exit her residence and get into the Subject Vehicle. A short time later, BEAN exited her driveway and drove down Sullivan Street towards Main Street, where she turned right. Surveillance units initiated mobile surveillance on BEAN and the Subject Vehicle. At the intersection of Granite Street and Main Street, BEAN drove through a red light. BEAN then took a left turn on 114A. At this time because of BEAN's erratic driving surveillance units lost sight of the Subject Vehicle.

11.     A short time later, I received information from the CD that BEAN was currently meeting with her SOS.  The purpose of the meeting was so that BEAN could repay the SOS for methamphetamine that was previously supplied to her.

12.     On October 19, 2021, at approximately 11:00 p.m., law enforcement observed a yellow Jeep (MA registration 2JH776) park across the street from BEAN's apartment.  The aforementioned vehicle is registered to Peter DIORIO of 7 Seamont, Rd, A#1, Peabody, MA.  A short time later, the Subject Vehicle was observed arriving at BEAN's apartment.  BEAN was observed exiting the Subject Vehicle.  At the same time, the male from the yellow Jeep exited and met with BEAN.  Both subjects went into BEAN's apartment.  Several minutes later, the male was observed leaving BEAN's apartment.  He got into the yellow Jeep and drove away.

13.     Shortly after the male left BEAN's apartment, I received information from the CD that BEAN met with her SOS at her apartment on Sullivan Street.  The CD stated that BEAN's SOS was driving a bright yellow Jeep with MA Plate 2JH776.  This information was confirmed by what surveillance previously observed.

14.     On October 26, 2021, I received information from the CD that BEAN would be resupplying with methamphetamine around 7:30 p.m. Agents from HSI Manchester established surveillance at BEAN's residence around 6:30 p.m. At approximately 7:33 p.m., BEAN exited her residence and got into the Subject Vehicle and head towards Rt 293.  Agents continued to follow BEAN south down Rt 93 South to exit 3.

15.     At exit 3, BEAN exited the highway.  At the bottom of the off ramp, BEAN made a left turn onto Rt 111.  BEAN drove about a half mile and made a right turn into the Mobile gas station.  As the Subject Vehicle pulled into the Mobile station, surveillance units noticed the yellow Jeep MA 2JH776 parked alongside the building with a white male in the driver's seat.  BEAN pulled up alongside the Jeep and an older white male exited the jeep.

16.     At the time the white male exited the Jeep, surveillance agents noticed that the white male was holding something in his hand. Once the male approached the driver's side of the Subject Vehicle, he passed BEAN the object that he was holding. After a brief conversation, the male got back into his vehicle and both parties departed in separate directions. I was later able to speak with the CD.

17.     The CD stated that BEAN did in fact meet with her SOS and obtained somewhere around 6 or 7 ounces of methamphetamine. I instructed the CD to make contact with BEAN and order 2 ounces of methamphetamine. After a conversation with BEAN and the CD, BEAN stated that she would sell the CD 2 ounces of methamphetamine for $1,400. BEAN stated that she would be ready to sell 2 ounces whenever the CD was ready.

18.     On October 27, 2021, I instructed the CD to make contact with BEAN and arranged to purchase 2 "zips" of methamphetamine for $1,400. "Zip" is a common term used by drug dealers referring to an ounce. BEAN stated that she had some appointments during the day and would be back at her apartment around 6:30 p.m.

19.     At approximately 6:00 p.m., HSI Manchester agents established surveillance in the area of 76 Sullivan Street. At the time surveillance was established, BEAN was not at her residence. At approximately 6:20 p.m., agents observed BEAN arrive back at her apartment in the Subject Vehicle. BEAN along with an unknown white male exited the Subject Vehicle and went into the residence.

20.     At approximately 6:30 p.m., Special Agent Jarred Matyka and I met with the CD. At that time, I searched the CD for any prohibited items and located none. The CD was given $1,400 in United States currency along with a recording and transmitting device. The CD was then driven to BEAN's apartment by an HSI Undercover Agent. A short time later, the CD exited the apartment and got back into the HSI UCA's vehicle. Once in the vehicle, the CD handed the

HSI UCA a light-colored shopping bag that contained what appeared to be 2 ounces of methamphetamine (56 grams). The HSI UCA and the CD then left the area.

21. The CD stated the following occurred while in the residence of BEAN. Once inside the apartment, the CD stated that BEAN along with a male the CD knows as "Timmy" were in the room. BEAN instructed the CD to check behind the TV for the methamphetamine. The CD confirmed that the price was $1,400 and BEAN said yes. The CD handed BEAN the money.

22. I later weighed the suspected methamphetamine and it weighed approximately 56 grams. The methamphetamine was sent to the Customs and Border Protection Lab (CBP) for analysis. On November 24, 2021, I received confirmation from the CBP Lab that the substance summitted tested positive for methamphetamine and weighed 54.82 grams.

23. On November 3, 2021, an HSI UCA initiated a text conversation with BEAN to arrange a meeting with her to purchase 1 ounce of methamphetamine. The UCA sent a text message to BEAN at 603-657-4155. After some brief conversation between the UCA and BEAN, BEAN agreed to sell the UCA 1 ounce of methamphetamine for $700. BEAN stated that she was in possession of the ounce currently and wanted to know what time the UCA would be at her apartment. The HSI UCA stated they would be there around 6:30 p.m.

24. At approximately 6:00 p.m., HSI Manchester agents established surveillance in the area of 76 Sullivan Street, Manchester. The Subject Vehicle was parked next to BEAN's apartment. A short time later, the HSI UCA arrived at BEAN's apartment. Prior the arrival of the UCA, the UCA was equipped with a recording (Video/audio) device and provided with $700 to purchase the 1 ounce of methamphetamine.

25. The UCA went to the front door of 76 Sullivan Street and knocked. A short time later, a white female who was later identified as BEAN answered the door. It should be noted that the UCA is familiar with what BEAN looks like. Once inside the apartment, the HSI UCA and

BEAN entered what appeared to the BEAN bedroom and had some brief conversation. BEAN stated that it was good the UCA arrived when they did, because she was just getting ready to leave to go and meet a new SOS.

26. During the conversation, BEAN went to the side of her bed and reached down to the floor and removed a box from what looked like a hide in the floor. BEAN set the box on the bed and opened it. BEAN removed a bag and inside that bag, BEAN removed the 1 ounce of methamphetamine and gave it to the HSI UCA. The HSI UCA then handed BEAN the $700.

27. BEAN told the HSI UCA that she can get whatever amount of methamphetamine the HSI UCA wants. She requested that the HSI UCA make contact with her the night prior so that she could make sure she had the amount. If she didn't, she could go and get it from her SOS. After this conversation, the HSI UCA left the apartment.

28. I later weighed the suspected methamphetamine and it weighed approximately 28 grams. The methamphetamine was sent to the CBP for analysis. On November 24, 2021, I received confirmation from the CBP Lab that the substance summitted tested positive for methamphetamine and weighed 27.06 grams.

29. Shortly after the HSI UCA left the address, BEAN exited the apartment and got into the Subject Vehicle and left the area. I later spoke with the CD, and they confirmed that BEAN was going to meet a new SOS named "Helmet." I later spoke with members of the Manchester Police Department narcotics unit to inquire if they have heard of the name "Helmet." They confirmed that "Helmet" is a known source for methamphetamine on the West Side of Manchester.

30. On December 5, 2021, an HSI UCA made contact with BEAN and discussed purchasing 2 ounces of methamphetamine for $1,400. BEAN stated that she was not dealing with

her old SOS and that she was now dealing with a new SOS in Manchester. BEAN stated that she would ride with the HSI UCA to her new SOS to make the purchase.

31. On December 6, 2021, I spoke with the CD and inquired as to who was BEAN's new SOS. The CD stated that until BEAN repaid what money she owed to her previous SOS (DIORIO) she was now going to a female named Amy. Through investigative methods, I was able to locate an Amy BOISVERT on Facebook that BEAN was friends with. I later showed the CD a photograph of BOISVERT, and they confirmed this was BEAN's new SOS.

32. On December 8, 2021, an HSI UCA met with BEAN at her apartment. BEAN got into the HSI UCA's vehicle and they drove to the area of 454 Pine Street, Manchester, New Hampshire. BEAN informed the HSI UCA to pull over on the side of the street and they would wait for "Amy."

33. A short later, a white female exited 454 Pine Street and BEAN pointed her out as Amy. The HSI UCA recognized Amy as Amy BOISVERT. BOISVERT got into the back seat of the HSI UCA vehicle and instructed the HSI UCA to drive around the block. Once the vehicle was in motion, BOISVERT removed the methamphetamine from an unknown location and handed it the HSI UCA. In turn, the HSI UCA handed BOISVERT $1,400 and she placed the money in her bra. The HSI UCA then pulled over and let BOISVERT out of the vehicle and drive BEAN back to her apartment.

34. I later weighted the suspected methamphetamine and it weighed approximately 57.2 grams. The methamphetamine was sent to CBP for analysis. Results from CBP are pending at this time.

35. On December 13, 2021, an HSI UCA made contact with BEAN and discussed purchasing 2 ounces of methamphetamine later in the week. BEAN stated that she would be able

to meet with the HSI UCA on December 14, 2021. BEAN stated that they would have to take a ride to meet with her SOS.

36. On December 14, 2021, BEAN told the HSI UCA that she would meet them in the JFK Parking Lot in Manchester around 6:30 p.m. BEAN stated that the HSI UCA would hop in the Subject Vehicle, and they would drive to the SOS. Ultimately this purchase did not take place. BEAN's SOS did not answer the phone.

37. On December 20, 2021, I spoke with the CD. The CD stated that over the weekend, BEAN met with her old SOS (DIORIO) at his house. DIORIO informed BEAN that he would deal with her again, only if BEAN supplied at least half the money for the order upfront. The CD stated that BEAN would be going back to her old order of around 2 pounds per week.

## AUTHORIZATION REQUEST

38. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the HSI or their authorized representatives, including other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the Subject Vehicle within the District of New Hampshire within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the Subject Vehicle after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; and, if necessary, to surreptitiously enter the resident parking areas of the locations specified herein to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire.

39. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

Respectfully submitted,

/s/ Benjamin Slocum
Special Agent Benjamin Slocum
Homeland Security Investigations

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Date: Dec 23, 2021

Time: 11:40AM, Dec 23, 2021

The Honorable Daniel J. Lynch
United States Magistrate Judge